UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RICARDO GARNELL LEE, SR.,<br>　　Plaintiff, | Case No. 1:14-cv-868<br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| KIMBERLY JOHNSON-WHARTON, et al.,<br>　　Defendants. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Ricardo Garnell Lee, Sr., a resident of Cincinnati, Ohio, brings this action against the judge, magistrates, prosecutors, social workers, guardians ad litem, attorney and other Hamilton County, Ohio employees involved in the court proceedings resulting in the termination of plaintiff's parental rights. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a sua sponte review of plaintiff's complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the

plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a

factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff's pro se complaint alleges that the 21 individuals named as defendants in this lawsuit "collectively conspired" to violate his "protected liberty interest right to the custody and care" of his minor child in violation of the Fifth, Ninth and Fourteenth Amendments to the United States Constitution. (Doc. 1 at PAGEID #7). Plaintiff alleges he was denied due process and equal protection of the law when, starting on December 26, 2012, an emergency complaint to remove plaintiff's son from his custody was filed "based on insufficient and fabricated evidence and allegations." (*Id.* at PAGEID #8). He alleges that the county prosecutors, case workers, guardians ad litem, magistrates, his attorney, the juvenile court judge, supervisors with the Hamilton County Department of Jobs and Family Services (HCJFS), the director of HCJFS, the director of the Ohio Department of Jobs and Family Services, and the visitation facilitator for the Family Nurturing Center all knowingly conspired to deprive plaintiff of his parental rights. Plaintiff alleges this conspiracy continued through April 18, 2014, the date of the final court proceeding before the juvenile court judge which resulted in the termination of plaintiff's parental rights and the transfer of permanent custody of his son to HCJFS. Plaintiff alleges that at each court proceeding, the defendants either presented false or fabricated evidence against him

or knowingly considered such evidence in deciding to terminate his parental rights. He alleges that there was insufficient evidence establishing his son was a "dependent child" in "foster care" under the applicable law before a juvenile court action could properly be initiated and therefore there was no legal basis upon which to terminate his parental rights. He alleges HCJFS failed to make reasonable efforts for reunification of plaintiff and his son in accordance with state law. Plaintiff also alleges that his attorney "knew" that the defendants "were conspiring to terminate his parental rights by fabricating evidence and facts and committing perjury in open court without providing the plaintiff with equal protection and due process of the law." (*Id.* at PAGEID #11). Plaintiff states his lawyer refused to address the issues plaintiff wished to assert before the Ohio Court of Appeals and refused to withdraw from his representation of plaintiff on his direct appeal. He alleges HCJFS supervisors failed to properly train its caseworkers and permitted "caseworkers to fabricate evidence to have parents' children removed from their household [and] placed into foster care and their parental rights ultimately terminated without the benefit of procedural due process." (*Id.* at PAGEID #13). Finally, he alleges that the directors of the HCJFS and Ohio Department of Jobs and Family Services "knew or should have known" that caseworkers and supervisors are permitted to fabricate evidence for purposes of terminating parental rights. As relief, plaintiff seeks $3.5 million and "return of plaintiff's minor child back to plaintiff's full custody along with the restoration of the plaintiff's parental rights." (*Id.* at PAGEID #16).

As an initial matter, this Court does not have jurisdiction to reverse the state court's judgment terminating plaintiff's parental rights. The federal courts lack authority under the *Rooker-Feldman* doctrine to sit as a state appellate court to review state court determinations. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v.*

4

*Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine "stands for the proposition that a federal district may not hear an appeal of a case already litigated in the state court." *United States v. Owens,* 54 F.3d 271, 274 (6th Cir. 1995). The Supreme Court more recently reaffirmed that the *Rooker-Feldman* doctrine applies where, as here, a case is brought by a loser in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced and inviting the district court to review and reject that judgment. *See Exxon Mobile Corp. v. Saudia Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). The crucial question is whether the "source of injury" upon which the plaintiff bases his federal claim is a state court judgment. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008); *see also Hines v. Franklin Savings & Loan,* No. 1:09cv914, 2011 WL 882976, at *2 (S.D. Ohio Jan. 31, 2011) (Bowman, M.J.) (Report & Recommendation), *adopted*, 2011 WL 886128 (S.D. Ohio Mar. 10, 2011) (Weber, J.). "'If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.'" *Lawrence,* 531 F.3d at 368 (quoting *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006)).

Here, plaintiff directly challenges the state court's decision to terminate his parental rights and award permanent custody of his son to HCJFS. He explicitly requests a reversal of the decision terminating his parental rights and the return of his minor child back to his full custody. The concrete actions that give rise to plaintiff's claims for relief arise solely from actions taken by the defendants in the state-court proceedings and from the state court's substantive rulings in those proceedings. Construing the complaint liberally, it can only be interpreted as a request for review of the court's judgment in the state court case. Although plaintiff has alleged that defendants engaged in misconduct during the state proceedings, the source of plaintiff's injury derives solely from the state court's decision to terminate his parental rights. *Cf. Hillman*, 2011

5

WL 4711979, at *2 (rejecting the argument that the plaintiff stated an "independent claim" to the extent the "underlying state action was based on allegations that the named Defendant engaged in misconduct"). Indeed, in a similar case where the plaintiff alleged that the defendant and defendant's attorney committed fraud by lying in a state court proceeding to obtain summary judgment in the defendant's favor, the Seventh Circuit held that the federal district court lacked jurisdiction to consider the plaintiff's "due process" claim because it was "a thinly disguised effort to overturn the [state court] judgment," was "inextricably linked" with the state court's judgment, and was thus barred from review under the *Rooker-Feldman* doctrine. *See Dick v. Towles,* 67 F. App'x 965, 967 (7th Cir. 2003).

Moreover, the Sixth Circuit has consistently refused to exercise jurisdiction over claims collaterally attacking a state court judgment terminating a plaintiff's parental rights. "Under the principles of comity and deference to state expertise in the field of domestic relations, it has been our consistent policy to refuse to exercise jurisdiction over claims which seek to collaterally attack a state court judgment terminating parental rights." *Stephens v. Hayes,* 374 F. App'x 620, 623 (6th Cir. 2010) (citations omitted). *See also Sefa v. Kentucky*, 510 F. App'x 435, 437-38 (6th Cir. 2013) ("to the extent Sefa seeks a declaration that the state's child-custody determination was unlawful, an injunction for the minor children's release, and monetary damages arising from the child-custody decision, these claims constitute collateral attacks on the state court judgments terminating [his sisters]' parental rights and [were] properly excluded from consideration by the [district] court[ ].") (internal quotation and citation omitted).

Plaintiff may not invoke the federal jurisdiction of the Court by couching his claims challenging the termination of his parental rights in terms of a civil rights action. Any review of the constitutional claims asserted by plaintiff in this context would require the Court to review

the specific issues addressed in the state court proceedings against him. This Court lacks jurisdiction to review the state court proceedings or grant the relief plaintiff requests. Accordingly, his complaint should be dismissed for lack of subject matter jurisdiction.

In the alternative, plaintiff's complaint fails to state a claim upon which relief may be granted or seeks relief from defendants who are immune from such relief. Plaintiff fails to state a claim for relief against the defendants for a violation of due process or equal protection. Plaintiff alleges that the defendants provided, used, or condoned the presentation of fabricated evidence in his various court proceedings "designed to terminate plaintiff's parental rights and to put plaintiff's son up for adoption without providing due process or equal protection of the law." (Doc. 1 at PAGEID #9). Plaintiff repeats this claim throughout his complaint entirely as a legal conclusion and he provides no explanation of the factual bases for his due process and equal protection claims. (*Id.* at PAGEID #10, 11, 12, 13, 14, 15). The complaint provides no factual content or context from which the Court may reasonably infer that the defendants violated plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 678.

In addition, plaintiff's complaint against the prosecutor, judge and magistrate defendants must be dismissed because it seeks relief from defendants who are immune from such relief. "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Manetta v. Macomb County Enforcement Team*, 141 F.3d 270, 274 (6th Cir. 1998) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This includes a county prosecutor's initiation of a prosecution and presentation of the State's case at trial. *Imbler*, 424 U.S. at 431. *See also Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). Courts have consistently recognized that even the knowing presentation of false testimony at trial is an action protected by absolute immunity. *See Spurlock v. Thompson*, 330 F.3d 791, 797-98

7

(6th Cir. 2004). *See also Imbler*, 424 U.S. at 413, 430; *Buckley v. Fitzsimmons*, 509 U.S. 259, 267 n. 3 (1993). Such "absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously." *Lomaz v. Hennosy*, 151 F.3d 493, 498 n. 7 (6th Cir. 1998). Accordingly, plaintiff's claims that the prosecutor defendants knowingly presented fabricated evidence at his various court proceedings are barred by absolute immunity. *Imbler,* 424 U.S. at 430. *See also Jones v. Shankland,* 800 F.2d 77, 80 (6th Cir. 1986) (holding that a prosecutor's alleged "use of perjured testimony[,] the non-disclosure of exculpatory information[,] . . . conflict of interest problems[,] and . . . spy allegations" are all "related to the acts of an advocate and thus come within the area of prosecutorial immunity").

Likewise, plaintiff's claims against the judge and magistrate defendants are barred by judicial immunity. Judges are afforded absolute immunity from § 1983 liability for acts they commit while functioning within their judicial capacity. "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pierson v. Ray,* 386 U.S. 547 (1967); *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir. 1997). Judges retain absolute immunity from liability even if they act maliciously or corruptly, as long as they are performing judicial acts and have jurisdiction over the subject matter giving rise to the suit against them. *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). *See also Brookings v. Clunk,* 389 F.3d 614, 617 (6th Cir. 2004); *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001). It is clear that the decisions made by the judge and magistrate defendants in this case during plaintiff's various court proceedings were functions normally performed by judges. *Stump,* 435 U.S. at 362. Plaintiff has alleged no facts indicating that the judges acted "in the complete absence of all jurisdiction." *Stern*, 262 F.3d at 607.

Therefore, the judge and magistrate defendants are absolutely immune from civil liability in this matter.

Additionally, the guardian ad litem defendants are entitled to immunity. *See Kurzawa v. Mueller*, 732 F.2d 1456 (6th Cir. 1984) (as a person "integral" to "the judicial process" a guardian ad litem is entitled to absolute immunity). *See also Abessolo v. Smith*, No. 1:11-cv-680, 2012 WL 668773, at *7 (S.D. Ohio Feb. 29, 2012) (Report & Recommendation), *adopted*, 2012 WL 1564321 (S.D. Ohio May 2, 2012) ("'[G]uardians ad litem are entitled to absolute quasi-judicial immunity for performing job duties that are a part of the judicial process,' even if the plaintiff alleges that their testimony was false or that they conspired with others.") (quoting *Kolley v. Adult Protective Servs.*, 786 F. Supp.2d 1277, 1298 (E.D. Mich. 2011)).

Plaintiff's complaint also fails to state a facially plausible claim for relief under Section 1983 against the attorney that represented him in the state court proceedings. In order to succeed on a § 1983 claim, plaintiff must demonstrate that the defendants "acted under color of law. . . ." *Johnson-Kurek v. Abu-Absi*, 423 F.3d 590, 595 (6th Cir. 2005). "A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983." *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003). *See also Catz v. Chalker*, 142 F.3d 279, 289 (6th Cir. 1998). Therefore, plaintiff's complaint fails to state a claim for relief under section 1983 against his former attorney.

Plaintiff's conspiracy claims should also be dismissed. To prevail on a civil conspiracy claim, a plaintiff must show that the conspirator-defendants (1) engaged in a single plan; (2) shared a general conspiratorial objective to deprive plaintiff of his constitutional rights; and (3) committed an overt act in furtherance of the conspiracy causing injury to plaintiff. *See Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (analyzing civil conspiracy claim under

42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)); *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (analyzing civil conspiracy claim under § 1983). Plaintiff must allege facts showing not only an agreement by defendants to violate plaintiff's constitutional rights, but also an actual deprivation of a constitutional right. *Stone v. Holzberger*, 807 F. Supp. 1325, 1340 (S.D. Ohio 1992) (Spiegel, J.). In addition, "conspiracy claims must be pled with some degree of specificity" and "vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim. . . . Accordingly, pleading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (internal citations and quotations omitted). Plaintiff must allege facts to support the material elements of his conspiracy claim. *See Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009).

In this case, plaintiff has failed to allege any facts that would indicate that defendants engaged in a plan to violate his constitutional rights, shared a general conspiratorial objective with other defendants, or committed an overt act in furtherance of a conspiracy. Plaintiff merely alleges, in a conclusory fashion, that defendants engaged in a "conspiracy with the other defendants to deprive the plaintiff of his protected liberty interest right to the custody and care of his minor child . . . which resulted in the plaintiff's parental rights being terminated. . . ." (Doc. 1 at PAGEID #10). He repeats this vague "conspiracy" allegation throughout the complaint without alleging sufficient facts to demonstrate that defendants conspired against him. (*Id.* at PAGEID # 8, 9, 11, 12, 14, 15). Such "naked assertion[s] devoid of further factual enhancement" fail to meet the basic pleading standard under *Twombly*. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Plaintiff has thus failed to state a claim for relief for civil conspiracy.

Accordingly, in sum, the Court concludes that the plaintiff's complaint is subject to dismissal for lack of subject matter jurisdiction. In the alternative, plaintiff's complaint should be dismissed for failure to state a claim for relief and because it seeks relief from defendants who are immune from such relief.

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

2. The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. See *Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

Date: 11/17/14

Karen L. Litkovitz, Magistrate Judge
United States District Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICARDO GARNELL LEE, SR.,
   Plaintiff,

vs.

KIMBERLY JOHNSON-WHARTON, et al.,
   Defendants.

Case No. 1:14-cv-868
Dlott, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).